[No. C013391. Third Dist. June 17, 1993.]

In re DANIEL M. III, a Minor.
CRAIG P., Petitioner and Respondent, v.
DANIEL M., Jr., Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Tamera C. Trindade for Objector and Appellant.

Reese, Smalley, Wiseman & Schweitzer and Ralph T. Collins III for Petitioner and Respondent.

**OPINION**

**SCOTLAND, J.**—Appellant's son, Daniel M. III (Danny), resides with his mother, Lori P., and his stepfather, Craig P. (respondent). After appellant did not visit, contact or otherwise communicate with Danny for more than two years, respondent filed a petition to free Danny from appellant's custody and control pursuant to Civil Code section 232, subdivision (a)(1), which permits termination of parental rights when "[t]he child has been left . . . by one parent in the care and custody of the other parent for a period of one year . . . without communication from the parent . . . with the intent on the part of the parent . . . to abandon the child . . . ." (Further section references are to the Civil Code unless otherwise specified.) Respondent filed the petition to terminate parental rights so he could adopt Danny. (§ 227.10.)

At the hearing on respondent's petition, appellant acknowledged his failure to communicate with his son but claimed any effort to do so would have been futile due to interference by Lori. Appellant also alleged he was unable to visit Danny in person because appellant had become disabled and could not afford to travel from his home in the State of Washington to Danny's home in Redding, California.

The trial court found by clear and convincing evidence that appellant left Danny in Lori's custody for a period of one year without any communication

from appellant, and that appellant's claim Lori interfered with his efforts to contact Danny was not persuasive. The court then interpreted section 232, subdivision (a)(1) to require "the intent to abandon for the statutory period . . . and not an intent to permanently abandon." The court stated its interpretation of the statute was "important in this case" because, although there was sufficient evidence appellant intended "to entirely sever the parental relationship and avoid all obligations growing out of it during [the one-year] period," the evidence was "not sufficiently clear and convincing . . . that [appellant] intended to *permanently* desert or abandon his child." (Italics in original.) Judgment was entered freeing Danny from appellant's custody and control, and this appeal followed.

In the published portion of this opinion, we reject appellant's contention that the judgment must be reversed because the trial court construed section 232 to require intent to abandon for the statutory period only. As we shall explain, appellant's assertion that the section requires an intent to abandon permanently is not supported by the purpose and language of section 232 as a whole and would result in absurd consequences not intended by the Legislature.

In the unpublished part of this opinion, we disagree with appellant's claims that the judgment is not supported by substantial evidence of intent to abandon and that his due process right to notice of the proceedings was violated. Accordingly, we shall affirm the judgment.

DISCUSSION

I

Section 232 provides in pertinent part: "(a) An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within any of the following descriptions: [¶] (1) The child has been left . . . by one parent in the care and custody of the other parent for a period of one year . . . without communication from the parent . . . , with the intent on the part of the parent . . . to abandon the child. The failure . . . to communicate shall be presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to . . . communicate with the child, the court may declare the child abandoned by the parent or parents."

Appellant does not quarrel with the plain language of the statute, which provides that to terminate parental rights under section 232, subdivision

(a)(1), the parent must have had the requisite intent during the statutory period of one year. (*In re Randi D.* (1989) 209 Cal.App.3d 624, 629 [257 Cal.Rptr. 421]; *In re Brittany H.* (1988) 198 Cal.App.3d 533, 550 [243 Cal.Rptr. 763].) Rather, the question presented in this case is what is required to establish an intent to abandon.

According to appellant, section 232 requires that "an intent to *permanently* abandon must be found by clear and convincing evidence." (Italics added.) In other words, appellant claims the statute requires an intent to abandon the parent-child relationship forever, i.e., with the intent of never again claiming a parental right to resume the relationship some time in the future. We disagree.

"[A] court is to construe a statute ' "so as to effectuate the purpose of the law." ' " (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191].) "In addressing this issue we begin, as always, with the language of the statute itself." (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) "Under familiar rules of construction, words in a statute must be given the meaning they bear in ordinary usage [citation]; the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible [citation]." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) Moreover, "every word and phrase of a statute should be given significance in order to effect the legislative intent." (*Steinberg* v. *Amplica, Inc.* (1986) 42 Cal.3d 1198, 1205 [233 Cal.Rptr. 249, 729 P.2d 683].) "In attempting to ascertain legislative intent when construing a statute we presume that the Legislature did not intend absurd results. [Citation.]" (*In re Head* (1986) 42 Cal.3d 223, 232 [228 Cal.Rptr. 184, 721 P.2d 65].) "Accordingly, if a statute is susceptible to more than one interpretation, we must adopt the reasonable meaning and reject that which would lead to an unjust and absurd result." (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

The definition of "abandonment" most frequently employed by appellate opinions ("an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same") does not explicitly state whether the parent must intend to sever the parent-child relation permanently or whether an intent to sever the relationship during the statutory period is sufficient. (See *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 136 [256 Cal.Rptr. 884]; *Brittany H., supra*, 198 Cal.App.3d at p. 549; *Guardianship of Snowball* (1909) 156 Cal. 240, 243 [104 P. 444].)

To resolve the ambiguity, appellant suggests the word "abandon" in section 232 should be given the meaning it bears in ordinary usage, which he claims requires a "permanent intention" to forsake or desert. Appellant's argument finds superficial support in *In re Cattalini* (1946) 72 Cal.App.2d 662 [165 P.2d 250], where this court interpreted the word "abandon" as it appeared in section 232's predecessor statute, Welfare and Institutions Code former section 701. Quoting *In re Cordy* (1915) 169 Cal. 150, 153 [146 P. 534], *Cattalini* applied the definition found in Webster's New International Dictionary: " 'To relinquish or give up *with the intent of never again resuming or claiming* one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake.' " (72 Cal.App.2d at p. 669, italics added.)

*Cattalini* does not control the present case for two reasons. First, the *Cattalini* court's adoption of the highlighted definition was dictum because the father did not claim, as appellant does here, that he intended to forsake his child for only a limited time. There, the father "at all times . . . kept insisting that he had no intention of giving up his children." (72 Cal.App.2d at p. 668.) Second, construing section 232 to require an intent to abandon permanently is not supported by the purpose and language of section 232 in its entirety and would result in absurd consequences not intended by the Legislature.

The word "abandon" must be construed in context with the language of the statute as a whole to give significance to every portion thereof. (Cf. *Steinberg, supra,* 42 Cal.3d at p. 1205.) As pertinent to this case, section 232 authorizes the termination of parental rights when a child has been left by one parent in the care and custody of the other parent for a period of one year without communication and with the intent to abandon the child. By using the general term "abandon" ("intent on the part of the parent . . . to abandon the child") in conjunction with a specific period of time (one year during which the parent failed to communicate with the child), it appears the Legislature meant that an intent to abandon the child *during that period of time,* rather than an intent to abandon the child permanently, is sufficient to satisfy the statute. (§ 3534 [particular expressions qualify those which are general]; cf. *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159-1160 [278 Cal.Rptr. 614, 805 P.2d 873].)

This interpretation is consistent with the function of section 232. The Legislature has declared that the purpose of this section and other statutes governing the termination of parental rights is "to serve the welfare and best interests of a child by providing the stability and security of an adoptive

home when those conditions are otherwise missing from his or her life." (§ 232.6; see *Brittany H., supra*, 198 Cal.App.3d at p. 548; *In re Raymond H.* (1985) 175 Cal.App.3d 556, 564 [221 Cal.Rptr. 165].) To this end, the Legislature has directed that proceedings to terminate parental rights "shall be determined as expeditiously as possible" (§ 232.3) and that section 232 "shall be liberally construed to serve and protect the interests and welfare of the child." (§ 232.5.)

As the trial court astutely observed, a child's interest in obtaining the stability and security of an adoptive home would be defeated if the intent to abandon requirement of section 232 were interpreted to "allow an absent parent to totally forsake and desert his [or her] child for years at a time without fear of [losing] parental rights simply because he [or she] had the intent to reestablish the parent-child relationship at some indefinite time in the future." The trial court further noted that appellant's interpretation "would provide Civil Code Section 232 immunity to the parent who decides, without notice to the custodial parent or minor, to fulfill his [or her] lifelong ambition of a seven year around the world sailing expedition with the intent to avoid all support obligations and communication with the child for that period, but with the specific intent to resume the relationship at the termination of the voyage."

Under appellant's definition, parents could abandon their child yet deny the child the stability and security of an adoptive home merely by planning to resume relations with the child when he or she nears adulthood. If both parents assumed such a posture, the child effectively would be compelled to endure a childhood without any parents at all. The Legislature could not have intended such an absurdity.

To the contrary, it is apparent the Legislature has determined that the state's interest in the welfare of children justifies the termination of parental rights when a parent fails to communicate with his or her child for at least one year with the intent to abandon the child during that period, even though the parent desires to eventually reestablish the parent-child relationship. In other words, a child's need for a permanent and stable home cannot be postponed for an indefinite period merely because the absent parent may envision renewing contact with the child sometime in the distant future. (Cf. *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080 [261 Cal.Rptr. 903]; *In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038 [234 Cal.Rptr. 739] ["The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nuturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it."]; see also *In re Rikki D.* (1991) 227 Cal.App.3d 1624, 1632 [278 Cal.Rptr. 565] ["Children should not be required to wait until their parents grow up."].)

Simply stated, a child cannot be abandoned and then put "on hold" for a parent's whim to reunite. Children continue to develop, and the Legislature has appropriately determined a child needs a secure and stable home for that development. Consistent with the statutory purpose to serve the welfare and best interests of children by expeditiously providing a child with an opportunity for the stability and security of an adoptive home when those conditions otherwise are missing from the child's life (§§ 232.3, 232.6), we conclude that section 232's phrase "intent . . . to abandon the child" does not require an intent to abandon permanently. Rather, an intent to abandon for the statutory period is sufficient.

Appellant disagrees, claiming an intent to abandon permanently is required by the rationale of cases which recognize the uniqueness of the connection between parent and child and hold that parenting is a fundamental right. (Citing *Lehr* v. *Robertson* (1983) 463 U.S. 248 [77 L.Ed.2d 614, 103 S.Ct. 2985]; *Santosky* v. *Kramer* (1982) 455 U.S. 745 [71 L Ed 2d 599, 102 S.Ct. 1388]; *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; *In re Elise K.* (1982) 33 Cal.3d 138 [187 Cal.Rptr. 483, 654 P.2d 253]; *In re Carmaleta B.* (1978) 21 Cal.3d 482 [146 Cal.Rptr. 623, 579 P.2d 514].) ▆ Appellant concedes "no case appears to rest on point" but argues that, "because the interest to be terminated is one of the fundamental rights accorded the highest protection under the federal constitution," section 232 "must be interpreted strictly" to require that "an intent to permanently abandon" be shown by clear and convincing evidence. He is wrong.

"A parent's interest in the care, custody and companionship of a child is a 'liberty' to be ranked among 'the most basic of civil rights.' [Citations.] Hence, the parenting right may not be interfered with in the absence of a 'compelling state interest.' [Citation.] This means that section 232 . . . is subject to a strict standard of judicial review under which the severance of the parental relationship can be upheld only if it is necessary to the legislative purpose of the statute—the welfare of the child [citations]." (*In re David B.* (1979) 91 Cal.App.3d 184, 192-193 [154 Cal.Rptr. 63], italics omitted.)

As noted, a requirement that the parent intend to abandon the child permanently would compel many forsaken children to endure a childhood bereft of both the absent biological parent and the possibility of securing an adoptive parent. The welfare of the child requires that such result be avoided. (§§ 232.5, 232.6.) An interpretation of section 232 which permits severance of the parental relationship when a parent fails to communicate with his or her child for one year with the intent to abandon the child during that period does not offend substantive due process because it is narrowly drawn to serve a compelling state interest in the welfare of children.

Appellant next cites *In re Norma M.* (1978) 77 Cal.App.3d 110 [143 Cal.Rptr. 412] for the proposition that a statute may not be construed liberally in a manner which overlooks clear statutory language. (*Id.*, at p. 115.) However, this principle has no application here because of the competing meanings to which the term "abandon" is susceptible.

Appellant also cites *In re Baby Boy S.* (1987) 194 Cal.App.3d 925 [240 Cal.Rptr. 60], which cautions that sections 232.5 and 232.6 should not be used to "subordinate" or diminish section 232's requirement that the parent intend to abandon the child. (194 Cal.App.3d at p. 933.) Thus, a court should not use the device of liberal construction to find an intent to abandon where no such intent exists, simply because it appears the child's welfare and interests would best be served by adoption. (*Ibid.*) However, our rejection of appellant's assertion that intent to abandon must be permanent does not mean intent to abandon need not be proved. Nor does it mean that the parent, rather than the petitioner, must prove the requisite intent.

Rather, our construction of section 232 means the petitioner must prove intent to abandon for the statutory period, which is consistent with the section's purpose of timely facilitating the creation of a new parental relationship and "providing the stability and security of an adoptive home when those conditions are otherwise missing from [the child's] life." (§ 232.6.)

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 2, 1993.

---

*See footnote, *ante*, page 878.