73 Cal.Rptr.3d 123 (2008)
160 Cal.App.4th 766
In re N.E., a Person Coming Under the Juvenile Court Law.
Orange County Social Services Agency, Plaintiff and Respondent,
v.
Andre E., Defendant and Appellant.
No. G039168.
Court of Appeal of California, Fourth District, Division Three.
February 29, 2008.
Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.
Benjamin P. de Mayo, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.
No appearance for the Minor.

OPINION
O'LEARY, J.
Andre E. appeals from the order terminating parental rights to his daughter, N.E. He contends the order must be reversed because the juvenile court and the Orange County Social Services (SSA) failed to inquire of him whether N.E. is or may be an Indian child within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We find no merit to his contention and affirm the order.

FACTS
N.E. was taken into protective custody at the age of three due to her mother's failure to protect her. Mother had a history of substance abuse, an extensive criminal *124 history, and had periods of incarceration during which she could not care for the child. At the time of detention, mother was married to another man,[1] but Andre was identified by mother as N.E.'s biological father and his whereabouts were unknown. Andre too had a history of substance abuse, arrests, and convictions including violent felonies.
Mother was present at the detention hearing on September 27, 2006. She advised the juvenile court she might have Seminole Indian heritage. The court found ICWA might apply and ordered SSA to investigate. Mother advised the juvenile court Andre was currently incarcerated at the Camp Verde Detention Center in Arizona.
On October 31, 2006, SSA reported an ICWA social worker had interviewed mother and had obtained an address for Andre at the Camp Verde Detention Center. Mother told the ICWA social worker Andre (with whom mother had lived for three years) did not have any American Indian ancestry. The ICWA social worker sent a letter to Andre asking him to contact the social worker by collect call. Almost a month had passed, and Andre had not contacted the ICWA social worker. SSA had given the appropriate ICWA notices to the Bureau of Indian Affairs (BIA) and the Seminole Tribe. The notices identified Andre as an alleged father.
In a report filed November 15, 2006, SSA reported the assigned social worker (not the ICWA social worker) had contacted Andre who was now incarcerated at the Arizona State Prison in Kingman, Arizona. Andre's expected release date was June 2007. There is nothing in the record indicating the social worker asked Andre if he had any American Indian ancestry.
At a hearing on November 15, 2006, the juvenile court appointed counsel for Andre. Through his counsel, Andre stipulated to the court's order that ICWA notice had been given to the BIA and all required tribes, and ICWA did not apply. Thereafter, all of SSA's reports indicated ICWA did not apply.
On December 6, 2006, Andre was declared N.E.'s presumed father. At the jurisdictional hearing on December 19, the juvenile court sustained the allegations of an amended petition, and set a contested dispositional hearing. After several continuances, the contested dispositional hearing took place on March 7, 2007. The court did not order services for mother or Andre and scheduled a permanency planning hearing.
Neither parent was present for the permanency planning hearing on August 15, 2007, but both were represented by counsel. N.E. was in a pre-adoptive home and mother was in agreement with the recommendation that parental rights be terminated and N.E. be freed for adoption. Andre's counsel made no argument that any of the statutory exceptions to termination of parental rights applied, but asked the court to consider legal guardianship instead of adoption. The juvenile court found N.E. was adoptable and none of the statutory exceptions to termination parental rights applied. The court terminated parental rights and Andre appeals.

DISCUSSION
Andre contends the termination order must be reversed because SSA and the juvenile court failed to comply with their duties to inquire if he had any Indian ancestry. We reject Andre's claim of error.
*125 Welfare and Institutions Code section 224.3, subdivision (a), and California Rules of Court, rule 5.481(a),[2] impose upon both the juvenile court and SSA "an affirmative and continuing duty to inquire" whether a dependent child is or may be an Indian child. The social worker must ask the parents if the child has Indian heritage (Cal. Rules of Court, rule 5.481(a)(1)), and upon a parent's first appearance in a dependency proceeding, the juvenile court must order the parent to complete a Parental Notification of Indian Status form (Cal. Rules of Court, rule 5.481(a)(2)).
Here, it is not clear SSA or the juvenile court complied with their inquiry duties. On the one hand, an ICWA social worker tried unsuccessfully to contact Andre. Another SSA social worker finally tracked Andre down and spoke with him, but apparently did not question him about possible Indian heritage. The court did not order Andre to complete a Parental Notification of Indian Status form. But on the other hand, mother, with whom Andre had lived for three years, told social workers Andre had no Indian heritage. The ICWA notices sent to the BIA and the Seminole Tribe in response to mother's claim of Indian heritage identified Andre as an alleged father. When Andre finally appeared and was appointed counsel, his court-appointed counsel stipulated ICWA did not apply. Thereafter, all of SSA's reports stated ICWA did not apply. Andre does not assert on appeal that he in fact has any Indian heritage.
Even if the juvenile court and SSA failed in their inquiry responsibilities, we cannot disturb the juvenile court's order without a showing Andre was prejudiced by the claimed error. (Cal. Const., art. VI, § 13.) And in this case, where there is absolutely no suggestion by Andre that he in fact has any Indian heritage, he has failed to demonstrate the requisite prejudice.
Andre relies upon In re J.N. (2006) 138 Cal.App.4th 450, 41 Cal.Rptr.3d 494. In that case, the department conceded the record did not demonstrate adequate ICWA inquiry was done, but urged the court to find any error harmless, since there was nothing in the record to indicate mother had any Indian ancestry. The court "refuse[d] to speculate about what mother's response to any inquiry would be[,]" and reversed and remanded for the limited purpose of having the trial court make the ICWA inquiry. (Id. at pp. 461-462, 41 Cal.Rptr.3d 494.)
But we find the reasoning of In re Rebecca R. (2006) 143 Cal.App.4th 1426, 49 Cal.Rptr.3d 951 (Rebecca R.), more persuasive. In Rebecca R., the record was devoid of documentation indicating the department had made the requisite ICWA inquiry of the father. The father made no claim on appeal that he in fact had Indian heritage, but urged the inquiry error required reversal. The court declined to adopt In re J.N. `s procedure for a limited remand because the father failed to show a miscarriage of justice. (Rebecca R., supra, 143 Cal.App.4th at p. 1430, 49 Cal.Rptr.3d 951.)
In ruling, the Rebecca R. court observed, "The sole reason an appellate court is put into a position of `speculation' on the matter is the parent's failure or refusal to tell us. Father complains that he was not asked below whether the child had any Indian heritage. Fair enough. But, there can be no prejudice unless, if he had been asked, father would have indicated that *126 the child did (or may) have such ancestry. [¶] Father is here, now, before this court. There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not. [¶] In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a `get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way. [¶] The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal." (Rebecca R., supra, 143 Cal.App.4th at p. 1431, 49 Cal.Rptr.3d 951.)
Here, as in Rebecca R., Andre has not suggested he in fact has any Indian heritage. SSA's respondent's brief discusses Rebecca R., at length, but even in his reply brief, Andre still declines to assert he in fact has Indian ancestry. Under the circumstances, he has failed in his burden to demonstrate prejudice and we must affirm.

DISPOSITION
The order is affirmed.
WE CONCUR: RYLAARSDAM, Acting P.J., and ARONSON, J.
NOTES
[1] The court originally found mother's husband to be N.E.'s presumed father, but eventually vacated that order and eliminated him as a father for all purposes.
[2] The parties refer to California Rules of Court, rule 5.664, which was repealed effective January 1, 2008. The former rule's directives are now contained in California Rules of Court, rule 5.481, which became effective January 1, 2008.