Filed 6/28/22 In re R.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | C094893 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>P.C. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. No. STK-JV-DP-2019-0000315) |

Mother and father of the minor R.C. appeal from the juvenile court's September 2021 order terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, § 366.26.)[1] Mother and father both contend conditional reversal is required

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

because the San Joaquin County Human Services Agency (the Agency) and the court failed to comply with the inquiry and notice requirements under the Indian Child Welfare Act (the ICWA). (25 U.S.C. § 1901 et seq.) They also argue that the court erred in terminating parental rights without a proper ICWA finding. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issues on appeal concern ICWA compliance, we limit our factual and procedural recitation to that issue.

In August 2019, the Agency filed a section 300 petition on behalf of the minor (born in October 2018). In the August 2019 detention report, the Agency advised the juvenile court there was no reason to believe the minor is or may be an Indian child. The Agency also reported that paternal grandmother was willing to care for the minor. That same month, mother submitted the "Parental Notification of Indian Status" form (ICWA-020) and checked the box stating she had no known Indian heritage.

During the August 2019, detention hearing, the court asked mother whether she had Indian ancestry, and she responded, "No." Father, who was incarcerated, was not present during the hearing. The court ordered that the minor be detained.

Since father was incarcerated, the Agency mailed him the ICWA-020 form with detailed completion instructions. Father submitted the completed form in September 2019, checking the box stating he had no known Indian heritage.

In October 2019, the court found the allegations in the petition to be true and took jurisdiction over the minor. Mother and father were both present during the hearing; the court did not ask father whether he had Indian ancestry. In December 2019, the court adjudged the minor to be a dependent of the court. The court ordered reunification services for mother but not for father.

In the June 2020 status review report, the Agency noted that mother and father had both indicated they had no Indian heritage, and there was no reason to believe minor was an Indian child. The Agency asked the court to find that minor was not an Indian child.

2

The same information was provided in the September 2020 and February 2021 status review reports.

In March 2021, the Agency requested the court terminate services for mother. The proposed findings and orders included a finding that the minor was not an Indian child within the meaning of the ICWA.

During the March 2021 hearing, the court terminated reunification services for mother and adopted the proposed findings and orders from the Agency's March 2021 status review report, including the finding that the minor was not an Indian child within the meaning of the ICWA. The court also set a section 366.26 hearing for July 2021.

In the section 366.26 report issued in July 2021, the Agency recommended terminating mother and father's parental rights and freeing the minor for adoption. The Agency noted there was no reason to believe the minor was an Indian child given that mother and father had both indicated they had no Indian ancestry. The same information regarding the ICWA's application was repeated in the September 2021 status review report.

During the September 2021 section 366.26 hearing, the court terminated mother and father's parental rights and freed the minor for adoption. Although the court did not specifically address the applicability of the ICWA, it ordered that all prior orders not in conflict with the current order were to remain in full force and effect.

Mother and father timely appealed.

DISCUSSION

As a preliminary matter, we find no merit to mother and father's contention that the juvenile court erroneously failed to make findings on the application of the ICWA in this case. In March 2021, the court adopted the proposed findings and orders from the Agency's March 2021 status review report, including the finding that minor was not an Indian child within the meaning of the ICWA. When the court terminated parental rights

3

in September 2021, it ordered that all nonconflicting prior orders remain in full force and effect, including the finding that minor was not an Indian child.

We next turn to mother and father's argument that the Agency and the court failed to make an adequate inquiry to determine if the minor had Indian ancestry. Even though mother and father both submitted ICWA-020 forms near the start of the proceedings indicating they had no known Indian ancestry, mother and father each contend the Agency should have contacted minor's extended family to inquire whether minor might be an Indian child. Father also argues the court was required under section 224.2 to ask him about any Indian heritage during his first court appearance, even though he had already filed an ICWA-020 form stating he had no known Indian heritage.

The juvenile court and the Agency have "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (*Ibid*.) "If a child is placed into the temporary custody of a county welfare department[, the department] has a duty to inquire whether that child is an Indian child[, including] asking the child, parents, . . . extended family members, [and] others who have an interest in the child" whether the child is or may be an Indian child. (§ 224.2, subd. (b).)

To the extent the juvenile court and the Agency erred in failing to ask (1) father about Indian heritage during his initial court appearance; and (2) extended family members about possible Indian heritage, neither father nor mother has ever made any assertion that contradicts their denial of Indian ancestry during the proceedings at issue here. "Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required. [Citations.]" (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re M.E.* (2022) 79 Cal.App.5th 73, 85-

4

86 [errors in ICWA notice subject to harmless error analysis]; see also *In re N.E.* (2008) 160 Cal.App.4th 766, 769 [failure to ask father whether he had Indian ancestry was harmless where father "does not assert on appeal that he in fact has any Indian heritage"].)

There must be "some indication of prejudice—to the [parent] or to the tribes—before we reverse a final order terminating parental rights." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1071, italics omitted [affirming order to terminate parental rights despite father's challenge to ICWA compliance where there was neither information in the record nor an offer of proof on appeal supporting that the minor could have been an Indian child].) Finding none here, we will affirm.

DISPOSITION

The order of the juvenile court is affirmed.


                                          KRAUSE , J.


We concur:


HULL , Acting P. J.


MAURO , J.


5